FILED
2017 APR -6 A 11: 28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

**SUSAN TUMLIN,**
    **Plaintiff,**

**JURY TRIAL DEMANDED**

vs.

**2:17-cv-00544-JEO**

**BLOUNT SPRINGS MATERIALS, INC., and GOOD HOPE CONTRACTING, INC.,**
    **Defendants.**

## COMPLAINT

Plaintiff, Susan Tumlin, hereby brings the following Complaint against Defendants, Blount Springs Materials, Inc. (hereinafter referred to as "Blount Springs"), and Good Hope Contracting, Inc. (hereinafter referred to as "Good Hope"). Plaintiff states as follows:

## PRELIMINARY STATEMENT

1. This is an action for declaratory judgment, equitable relief and monetary damages brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2611, et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq.; and the Alabama Age Discrimination in Employment Act ("AADEA"), Code of Ala. § 25-1-20, et seq.

2. The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured by the ADA, FMLA, ADEA, and the AADEA, providing for relief against the discrimination of Americans with disabilities, retaliation and violations of rights protected by the FMLA, and age discrimination.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under the ADA and ADEA. Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 23, 2016, which was within 180 days of the occurrence of the last discriminatory action. Plaintiff received her Right-to-Sue letter from the EEOC on March 3, 2017, and files this action within 90 days of said date.

4. Venue is proper in the Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

5. Plaintiff, Susan Tumlin, is a woman of 59 years who resides in Etowah County, Alabama. She is a citizen of the United States of America.

6. Defendant, Blount Springs Materials, Inc., is a corporation which operates in Blount County, Alabama, and which is subject to suit under the ADA, FMLA, ADEA, and the AADEA.

7. Defendant, Good Hope Contracting, Inc., is a parent company to Blount Springs Materials, Inc., operating in Blount County, Alabama. Good Hope is also an entity subject to suit under the ADA, FMLA, ADEA, and the AADEA.

## FACTS

8. Defendant, Good Hope Contracting, Inc., is in the business of paving roadways under contract. Good Hope owns numerous trucks which are used to transport materials from its asphalt plants.

9. Defendant Blount Springs Materials, Inc., is a surface mining company founded by the founders of Good Hope Contracting to supply paving materials to Good Hope. Blount Springs operates four or more quarries in Alabama.

10. Plaintiff was employed by Blount Springs for twelve total years, working most recently in the on-site office trailer of one of the quarries from May 2013 until June/July 2016.

11. Plaintiff managed the day-to-day recording and clerical duties of the operation, including registering the weight of materials in the trucks, issuing load tickets for the supplies that each truck carried, and clerical duties such as handling payroll, typing daily reports, making copies, answering the phone, and setting up deliveries for materials over the phone.

12. Plaintiff frequently worked overtime hours for the company and was rewarded for her performance with a raise of $1 more per hour in the months leading up to her termination.

13. As an employee, Plaintiff had health insurance through the company.

14. Due to complications from cancer, Plaintiff needed to have part of her left leg surgically amputated. Plaintiff planned the surgery for May 4, 2016, and informed her employers well in advance of that date that she would need the time to recover from the surgery before returning to work.

15. Plaintiff requested Family Medical Leave but was told that the company did not have a form for it, despite there being over 50 employees in the company.

16. Plaintiff went ahead with the surgery and was released from the hospital on May 11, 2016.

17. Plaintiff provided Defendant with a Return to Work approval form from her doctor on June 8, 2016, that stated Plaintiff could return to work on July 5, 2016. **See Exhibit "A," the University of Alabama at Birmingham Medicine's Return to Work Status Form.**

18. On the Return to Work form issued by Plaintiff's postoperative physician, Dr. Mark A. Patterson, M.D., it was recommended that Plaintiff should not lift over 10 lbs until

October 2016, which was not going to be a problem because Plaintiff seldomly needed to lift something over 10 lbs in the office trailer.

19. Dr. Patterson also included as a special work instruction that Plaintiff would require a wheelchair ramp to enter the building until she received her prosthetic leg in approximately October 2016. The office trailer had four steps leading up to its door.

20. When she asked about accommodations for returning to work, Plaintiff was given the runaround by Defendants for weeks, being told that she was still not physically able to return to work despite the doctor's written approval. A formal letter dated Friday, July 8, 2016, was sent to Defendants requesting a meeting to be held regarding the accommodations of the wheelchair ramp and minor weight-lifting restriction.

21. The following Monday, July 11, 2016, Plaintiff was called by Defendants's Human Resources officer, Danny Hall, that she could not come back to work. Mr. Hall told the Plaintiff that the company had hired someone to replace her and that she--the Plaintiff--had retired, which was unbeknownst to her. A male employee in his 20s with much less experience than the Plaintiff was initially the temporary replacement for the Plaintiff's position. This young man continues to perform in the Plaintiff's position and has even been given a company car and gas billable to the company, things not previously offered to the Plaintiff.

22. The Defendants refused the Plaintiff's requests for reasonable accommodation without discussing the requests with the Plaintiff and without stating any hardship that the company would incur by accommodating the Plaintiff.

23. The Defendants retaliated against the Plaintiff by terminating her employment and replacing her with someone younger and/or without disability who lacked experience and training comparable to what the position entails.

24. By willfully failing to offer the Plaintiff Family Medical Leave and subsequently terminating the Plaintiff during her necessary medical leave, the Defendants interfered with the Plaintiff's right to take Family Medical Leave. Furthermore, the Defendants retaliated against the Plaintiff for her request for Family Medical Leave.

25. As a result of her termination, the Plaintiff lost her health insurance through the company. While she was able to obtain her prosthetic leg on the day before her health insurance expired, the Plaintiff now cannot afford the health insurance needed to receive the physical therapy required to use the prosthetic leg. Use of a prothetic leg absolutely requires therapy by trained professionals, and that therapy could have been accessed by the Plaintiff while she continued to work for the Defendants.

26. Following her May 2016 surgery, Plaintiff was capable of performing her job with Defendants under the applicable restrictions (being confined to a wheelchair and unable to lift anything more than 10 lbs for three months); however, in July 2016, the reality was that the chances of someone else hiring her in that condition were not high. Therefore, Plaintiff chose to reinstate SSDI.[1] Her previous SSD application was effective until 2017, and so the Social Security Administration reinstated the previous application and added to it the amputation details. No new application was created for SSDI by the Plaintiff.

27. The benefits received by the Plaintiff are far less than what she received during her employment, and she planned to remain employed with the Defendants beyond retirement age. The effect of the sudden and unforeseen loss of a job which provided health insurance and overtime opportunities has caused Plaintiff substantial damages--even forcing her to move into

---

[1] In previous years and during the time the Plaintiff battled cancer, Plaintiff had to break from her work with the Defendant. She applied for and received Security Disability Income ("SSDI"). When she felt able to return to work, she resumed her employment with the Defendants in 2013.

an apartment because she could not afford to stay in her house.

28. In its response to the charge of discrimination filed with the EEOC, Defendant Blount Springs sought to use the Plaintiff's eventual application for Social SSDI against her and her claims. However, the Supreme Court of the United States has found that claims for SSDI and claims for ADA relief do not inherently conflict. *See* Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 801 (1999).

## COUNT I
## Discrimination Against Disability

29. The allegations of Paragraphs of 1 through 28 are hereby incorporated herein with reference and with the same force and effect as if set forth in full below.

30. Plaintiff brings this Count pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

31. Plaintiff is a qualified individual with a disability pursuant to 42 U.S.C.S. § 12102.

32. During her employment, Defendants devised the termination of Plaintiff's employment when she went to have a surgical amputation and made plans to permanently replace the Plaintiff despite her making her plans to return to work known.

33. Defendants did not bother to hold any meeting to address the accommodation requests.

34. Defendants discriminated against Plaintiff by "not making reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee," and Defendants have not demonstrated that the "accommodation would impose an undue hardship on the operation of the business." 42 U.S.C.S. § 12112. A wheelchair ramp on an office trailer is commonplace and would not raise the

issue of undue hardship, thus the Defendants' refusal to accommodate or even attempt to accommodate is discriminatory under the ADA.

35. Plaintiff's employment was terminated, in substantial part, due to her physical disability, Defendants' perception that Plaintiff was disabled, and Plaintiff's record of disability.

36. As a proximate result of defendants' discrimination against Plaintiff on the basis her disability and a record or perception of disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, and other employment benefits. The Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation. The Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

37. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein; this suit for backpay, declaratory judgment, and compensatory and punitive damages is her only means of securing adequate recovery.

38. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

39. The conduct of Defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling her to an award of punitive damages.

## COUNT II
### Retaliation Under the ADA

40. The allegations of Paragraphs of 1 through 39 are hereby incorporated herein with reference and with the same force and effect as if set forth in full below.

41. Plaintiff brings this Count pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., which prohibits an employer from retaliating against an employee for engaging in such protected action as making a request for reasonable accommodation and/or opposing an employer's denial of reasonable accommodation.

42. Plaintiff sent Defendant her return to work status and request for reasonable accommodations in June of 2016. Defendant did not respond to Plaintiff's request and dodged providing the Plaintiff with any information regarding when she could return to work. Weeks later, with no response from the Defendants, Plaintiff enlisted an attorney to set up a meeting between her and the Defendants to discuss her request for accommodation.

43. Only a few days after Plaintiff formally requested this meeting to discuss the reasonable accommodations, Defendants responded by firing the Plaintiff and informing her that she had been permanently replaced.

44. Defendant's retaliation was willful and in direct violation of the ADA. Plaintiff is entitled to the rights and remedies at law provided by the ADA, including, actual damages, compensatory damages, liquidated damages, punitive damages and attorneys' fees.

### COUNT III
### Family Medical Leave Interference and Retaliation

45. The allegations of Paragraphs of 1 through 44 are hereby incorporated herein with reference and with the same force and effect as if set forth in full below.

46. Plaintiff asserts both an interference and a retaliation claim under the FMLA.

47. Plaintiff, at the time of her request, was an eligible employee who was entitled to

leave to care for her own serious health condition under the FMLA. She had been with the Defendant employers for at least twelve months. *See* 29 U.S.C. § 2611.

48. Defendants refused to provide Plaintiff with the forms for Family Medical Leave, effectively denying the Plaintiff of her FMLA benefits, and retaliated against her through discharging her upon medical leave.

49. The Defendants violated the Family Medical Leave Act by interfering with Plaintiff's rights under the FMLA by refusing to allow her to take Family Medical Leave.

50. The Defendants further retaliated, coerced, oppressed, and/or took adverse action against Plaintiff due to her need for leave under the FMLA.

51. As a result of Defendants' actions, Plaintiff has suffered extreme harm, including but not limited to the loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment.

52. The Defendant denied or otherwise interfered with Plaintiff's substantive rights under FMLA when Plaintiff south to take time off due to her surgery and time to recover and thereafter return to her position.

53. Defendant retaliated against Plaintiff for engaging in protected activity under the FMLA.

54. Defendants willfully interfered with the Plaintiff's FMLA rights and willfully retaliated against the Plaintiff for asserting her FMLA rights.

## COUNT IV
### Discrimination Against Age Under the ADEA

55. The allegations of Paragraphs of 1 through 54 are hereby incorporated herein with reference and with the same force and effect as if set forth in full below.

56. Defendant terminated the Plaintiff's employment and tried to make it seem like she retired due to her age (59) and health.

57. The subjection of Plaintiff to disparate treatment and adverse employment actions by Defendants in whole or substantial part because of her age was in violation of the ADEA.

58. The Plaintiff's alleged retirement was not the true reason for her termination, but instead was to hide the Defendants' discriminatory animus.

59. Defendant replaced Plaintiff with someone 30 or so years younger who did not have comparable skill and experience to that of the Plaintiff.

60. The primary duties of Plaintiff's job were performed under substantially similar working conditions as the replacement's conditions. However, the young replacement employee received privileges such as a company vehicle to drive and gas billable to the Defendants. The Plaintiff did not receive these privileges of employment even though she put in over 12 years working with the company.

61. The Plaintiff was shuffled out of her position by the Defendants due to her advanced age.

62. Defendants' violation of the ADEA was willful and Plaintiff seeks liquidated damages.

63. Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of Defendants' violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to the

rights and remedies at law provided by the ADEA, including, actual damages, compensatory damages, liquidated damages, punitive damages and attorneys' fees.

## COUNT V
## Retaliation Under the ADEA

64. The allegations of Paragraphs of 1 through 63 are hereby incorporated herein with reference and with the same force and effect as if set forth in full below.

65. The ADEA makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding under the ADEA. 29 U.S.C. § 623(d).

66. When Plaintiff opposed the Defendant's act of replacing her for a much younger employee who lacked experience and training, Defendant retaliated by refusing to allow Plaintiff to return to work.

67. Defendant has provided Plaintiff's young replacement with privileges and more favorable treatment than was provided to the Plaintiff.

68. Defendant's retaliation in violation of the ADEA was willful and directly aimed to harm the Plaintiff. Plaintiff is entitled to the rights and remedies at law provided by the ADEA, including, actual damages, compensatory damages, liquidated damages, punitive damages and attorneys' fees.

## COUNT VI
## Discrimination Against Age Under the AADEA

69. The allegations of Paragraphs of 1 through 68 are hereby incorporated herein with reference and with the same force and effect as if set forth in full below.

70. This claim is made under the Alabama Age Discrimination in Employment Act which seeks to protect individuals over the age of 40 in Alabama from an employer's

discriminatory practices. Code of Alabama § 25-1-20, et seq. (1975).

71. At the age of 59, Plaintiff was an experienced employee with a stellar performance record with the Defendants.

72. Defendants terminated the Plaintiff's employment and spun the story to make it seem like she retired due to her age and health.

73. Plaintiff did not plan to retire for many more years and made that known to the Defendants; nevertheless, Defendants replaced Plaintiff with an untrained, inexperienced Good Hope employee who was 30 or so years younger than the Plaintiff.

74. Defendants gave the Plaintiff's replacement privileges of employment which the Plaintiff did not have and was never offered, such as a company vehicle to drive and gas billable to the Defendants.

75. Defendants were motivated to terminate the Plaintiff and dispense favor upon her replacement because of the Plaintiff's age.

76. Plaintiff has been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of Defendants' violation of her civil rights as alleged herein. Plaintiff is reasonably certain to continue to suffer these damages in the future. Plaintiff is entitled to the rights and remedies at law provided by the AADEA, including, actual damages, compensatory damages, liquidated damages, punitive damages and attorneys' fees.

## DAMAGES

77. Plaintiff has suffered embarrassment, humiliation, shame, damage to her reputation, mental distress, emotional and physical pain and anguish and lost wages in consequence of Defendants' unlawful conduct.

78. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, and compensatory, liquidated and punitive damages is her only means of securing adequate relief.

79. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiff respectfully prays that this Court will assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendants are violative of the rights of Plaintiff as secured by the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; the Family Medical Leave Act, 29 U.S.C. § 2611, et seq.; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq.; and the Alabama Age Discrimination in Employment Act, Code of Alabama § 25-1-20, et seq.

B. Enter an Order requiring Defendants to make Plaintiff whole by awarding her lost wages (plus interest), medical expenses, compensatory and punitive damages, liquidated damages, post-judgment interest, reinstatement and/or the loss of benefits including retirement, pension, seniority and other benefits of employment.

C. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to an award of costs, attorneys' fees, and expenses.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted on this the 5th day of April, 2017.

/s/Joshua B. Sullivan
**Joshua B. Sullivan**

/s/ Haley K. Tucker
**Haley K. Tucker**

OF COUNSEL:
**KNOWLES & SULLIVAN, LLC**
400 BROAD STREET, SUITE 105
GADSDEN, AL 35901
T: (256) 547-7200
F: (256) 467-6322
haley@kkslawgroup.com

**DEFENDANTS TO BE SERVED AT:**

Blount Springs Materials, Inc.
℅ Joshua S. Thompson
Scott Dukes & Geisler, PC
211 22 St. N.
Birmingham, AL 35203

Good Hope Contracting, Inc.
℅ Joshua S. Thompson
Scott Dukes & Geisler, PC
211 22 St. N.
Birmingham, AL 35203

**EXHIBIT A**